which is Oppisano v. Zur, 24-2955. Good morning to all of you.  And we have Attorney Caruso for the appellant, is that right? Good morning, Judge Nardini, yes. And you would like to reserve one minute for rebuttal, is that right? Yes, please, Your Honor. Okay, you can proceed whenever you're ready. Good morning to the panel. May it please the court, I'm Michael Caruso on behalf of the appellant, joined by my co-counsel, Ken Shaw McAndrew to my left. Your Honors, the appellant would respectfully request that this court reverse the lower court's denial of summary judgment on plaintiffs' 11th and 12th causes of action as there are errors of law in deciding the 11th and the 12th. Also, there was an impermissible, at least one impermissible factual inference drawn in favor of the non-movement. And we respectfully submit that had those issues on the 11th and 12th counts, which are the subject of appellant's cross motion, had they been decided in the manner they're supposed to on summary judgment, they would have been decided favorably to appellant. Specifically, Your Honors, that a purported conversion instrument that attempted to transfer stock in a disputed company that the appellant owned and take it into another trust. And then out of that trust, it was assumed, but not proven on summary judgment, that the respondent then used that stock and the appearance of owning that stock, which she did not submit proof of, to then take control of the FBO business and the disputed corporation, Sano Aviation Corporation, and then continue to solicit new partners and sell out the appellant for a million dollars out of his own company without proving that that transaction legally manifested. Specifically, Your Honors, the transaction involved tendering a stock share signed by Mr. Appettisano to his trustee, which was the respondent of an irrevocable trust, which appellant now admits is a trust, legally and legal and valid, as we learned in discovery. We did not know at the outset of the litigation. There is proof that stock went into that trust. There is not proof, accompanying that transfer agreement, that that stock was ever placed out of the trust and into respondent's corporation that she formed solely for the purpose of taking this stock. Her sale to the appellant was that, in connection with their joint business, she was going to use that transfer to help get a loan to facilitate infrastructure expansion at their aviation business, specifically to build hangars. It took, out of this relationship, which was admittedly personal and business over the course of 13 years. Can I back you up a little bit? I want to make sure we're talking about the right agreement. This is a 2011 agreement? Yes, Judge Nardini. Okay. Why don't you tell me about the limitations period? Yes, Your Honor. For the application of the statute of limitations defense to actually operate, Your Honor, it was the respondent's burden on summary judgment. We submit respectfully that she did not meet this burden. It was her obligation to tender proof that this was an arm's-length bona fide transaction that was actually consummated. Now, to do that, you would need the stock coming out of Mr. Opetisano into the trust. There was an agreement. And just analytically, to fit your argument into a legal box, is this the equitable tolling argument? That's part of it, Your Honor. I believe there's two independent grounds. There are two independent grounds why that accrual analysis should not take place and why the claims are timely. One is centering on the fact that that agreement and what it contemplates, leaving aside that it was self-dealing by a fiduciary, which is an invalidity in and of itself, the fact that it was never consummated in 2011 makes it void ab initio. So there can't be an accrual from an event that never legally was operable. And then what followed from 2011 to 2019, when respondents suddenly broke up with— Why can't there be an accrual? I thought your claim arises from that. And that is one of the claims is it's void ab initio and all that sort of thing. But why is it not the case that the accrual of your cause of action came into being at that time? Why not? Why is the validity of the contract triggered whether it accrued? It was—he was never legally aggrieved, Your Honor, because had that transaction been consummated properly, with stock being transferred by an appropriate stock power, with stock going out— The contention is that that transfer in 2011 was wrong, was void. Is that right? Correct, Judge Chin. Why didn't his cause of action accrue then? It didn't accrue then because the appellant was never aggrieved. He was never aware that this stock had been transferred out. And aware and aggrieved are two different things, right? Certainly, Judge. It could be aggrieved without knowing it. And then maybe you're saved by a discovery rule if there's a discovery rule for accrual. Certainly, Judge. So in this case— Go back to why. I mean, if someone's going to challenge a contract, right? Correct, Judge. On what basis you go back to the court and say, hey, the contract's void. I'm not bound. Great. You know, you sue within a year. If there's a six-year statute of limitations, you can void it. Okay. But if the problem is with the contract, the statute of limitations—I can't remember. Is it six years? What's the—I'm escaping. Whatever it is. Hypothetically, say six years, and you sue 10 years later, you can't go back 10 years later— Well, here's the issue. —if they accrual, if what you're challenging is the contract. Well, before we get to equitable tolling, Your Honor, which would obviate that. Right. So, Judge, the issue here is there's a very close relationship of a fiduciary to the trust beneficiary and the person who formed it. There was a very close operations relationship with this business. It's our position that our client, the appellant, who lacks any formal education, unfortunately, while he is very business savvy and learned his craft on the ground and has experienced success, it was an impermissible inference for Judge Ricchetti to assume that by reading that document in however long that took— Isn't that equitable tolling? Well, I apologize. Aren't you now into the equitable tolling? I've bridged that. I apologize, Judge. So let's go back to the equitable— Okay. But we're now in equitable tolling, because I think if you're talking about my client is— Let me— Not educated. That's what—it falls into the equitable tolling bucket, right? I'm sorry, Judge. Let me go back to that. So on the accrual issue, the defendant could never be—that document was legally a nullity. It didn't accomplish anything. No claim could accrue because the client, the appellant, was not divested of anything. The stock was put in trust. It was not then transferred out to the respondent, so she could then take it and sell it down the river to another gentleman for a million dollars in 2019, which, to the tolling argument, Judge Nardini, the appellant did become aware that he had been had, and that happened in 2019 when all parties agree their personal and business relationship imploded. At that time, our client had realized he had been lulled into submission. So the purchase agreement had no impact on your client, you're saying? Legally, no. No, no, no. In real life, it never did. Well, Judge, the unfortunate impact of this, and I'm going to say— Because I thought you were arguing it's part of the problem. It is part of the problem. So I guess that's why I'm trying to understand how you're saying, how is it that the claim never accrued because it was invalid, because he was never aggrieved? I can understand if you're saying, well, the grief in terms of—grief is not what makes something accrue, but the grief didn't come until years later. But if it's all stemming from an invalid contract, you get to attack the contract within six years. The accrual we're arguing with this cause of action is marked by her continuing to serve as his trustee. She hasn't resigned. She hasn't renounced. We have— This is more of a continuing. It is. It is, Your Honor. That's different. She has not disputed that. And now she has taken the appearance of ownership that she gained from that illicit transaction and marketed it to a third party. She hasn't produced any proof of consideration that she actually paid the trust. When did she market it to the third party? The record will show that in 2018, she was meeting with a gentleman by the name of Marshall Miles in approximately 870 of the appendix. And in 2019, unbeknownst to the appellant, the respondent was engaging in dozens of phone calls to Mr. Miles on record 484, where she was presumably discussing him acquiring a pound's share in the very company that she used that appearance of an arm's-length transaction to gain the appearance of control. He just said he didn't get consideration. Correct. I assume you're referring to the $40,000 for the sale of the securities? Correct, Judge Kahn. Back to her. But he signed that contract, so he would have known. I mean, let's leave aside that he's not educated. He's not the business guy. I guess he said he didn't read it. But if he had read it, he would have known he was entitled to get $40,000. But they've never proven that. They've never produced evidence of that payment. That may be true, Judge Kahn. Okay, great. Yeah, they don't have proof of the payment, but the time to sue on not getting paid would have been when he signed the document that said he was supposed to get paid. I guess it gets back to the issue of when it accrued. But even if you're not sophisticated enough, I think most people would be able to read a document and say, gee, I'm due $40,000. Judge, his testimony. When does Dawn hit on Marblehead? Well, Judge, respectfully, the defendant, I'm sorry, the appellant did not. He was not aware of the nuances of that agreement. Now it's just deposition testimony. The reality here is you have a 13-year relationship between these parties that contains enormous amounts of credibility determinations on those issues. So is it because he didn't read it or because he read it and the nuance of that he would be due $40,000 was missed by him? I think the correct answer, Your Honor, is that it's probably a bit of both. However, the active concealment that Respondent engaged in, in continuing to solicit his work, nothing changed between them regarding their respective roles, which she disputes at their business. That continued for eight more years until all of a sudden Mr. Miles comes in, pays a million dollars. He has branded her, quote, new partner, and the appellant is shown the door. Okay. I think we have your argument, unless there are other questions right now. Why don't we hear from your opponent? We'll have Attorney DeSouza for the appellate. Yes. Good morning, Your Honors. I'm Daniel DeSouza. I represent Appellee Linda Zer. Your Honors, there's two issues here in this appeal. One is the counts 11 and 12, which essentially is a statute of limitations, a declaratory judgment that was subsumed in the unjust enrichment claim, and then there's the lack of partnership issue. I think we've been focusing on the statute of limitations issue. I don't know that Mr. Caruso even got to the partnership issue, so I'll start there. Why don't you focus on the things that your opponent talked about? Yeah, I'll focus on that, Your Honor. Your Honors, it is undisputed that what the plaintiff sued for here is a declaratory judgment that the trust is invalid. I never signed it. It's invalid. The purchase agreement, I never signed it. It's invalid. And as a result, I have an unjust enrichment claim that says because there never was a purchase agreement, I'm owed all the profits from this company because I own the company. As your Honors have questioned, well, why wasn't he on notice of this? And the only way you get past the six-year statute of limitations, which expired at latest in 2017, three years before this lawsuit was even filed, is by principles of equitable tolling. And there, the law is crystal clear. A plaintiff is required to act diligently to preserve his rights. And the case law, as cited by the district court, New York State courts as well, is that if you sign an agreement, you are on notice of actually reading it. The fact that you say I'm unsophisticated, I didn't understand, and that's not what the record says. The record simply says I signed it, but I didn't read it. I didn't bother or endeavor to read it. You cannot create equitable tolling by stating I just didn't bother to read something. And it goes beyond that. It's not just the existence of the agreement. The record here is clear. The record clearly provides after this purchase agreement, the New York Corporation, Sano Aviation Corporation, completely ceased filing its annual reports with the state of  It was the last year, 2010, that it filed. Mr. Sano's name, the plaintiff's name, was on all of those reports. He signed all of those reports up to 2010, stopped filing them thereafter, after 2010. These are public documents filed on Florida's Secretary of State website. He was asked in his deposition, are you aware that you have to file annual reports for your corporation? He stated, yes. Well, then why didn't you bother to look and see that these stopped being filed or that your name was no longer associated with the company? I have people that do that, was his answer in deposition. So constantly from 2011, from January 2011, for the next nine years, he cannot possibly in good faith state that he was not on some form of inquiry notice or that he acted diligently in trying to preserve his rights. All he says is, well, we continued to be boyfriend and girlfriend, and it was business as usual, and I kept supervising and managing people, and all was well. But there's no evidence, there is no record evidence of his continued ownership of this company. It's not like he can point to and say, in 2017, I got a $200,000 profit distribution. It's not like he can say, I received dividends every year, year after year, that I was required to sign personal guarantees on loans. Well, he claims, he claimed, I thought, that he reinvested his profits. He did. I thought that was the claim. But even if that's the case, he would have had to pay taxes on that, right? Exactly. And his personal... So the question then becomes, okay, if you had personal income or gain from this business that you reinvested, do the tax returns reflect that? Because I'm sure the IRS would want to know if there were some profits. And they don't. He has filed his tax returns every year from 2005 through the present. He's used the same accountant and bookkeeper that was used back in 2005. He plainly admits not a one of his tax returns identifies this purported partnership as a partnership. He's filed tax returns with partnerships, identifying partnerships on there. He's filed partnership tax returns for partnerships he is associated with. He has not once claimed a penny of profit or distribution with respect to this partnership. In fact, in 2019 and in 2018, the IRS specifically... I'm sorry, this might have been in 2020. And there is record evidence of this. The IRS wrote to the plaintiff, to the appellant, and stated, we need your position with respect to the Sano Aviation Corporation. And he swore under penalty of perjury in the response for both the 2019 and 2018 tax years, I have never been affiliated with this company, is what he says. Under penalty of perjury. Your Honors, not to be tongue-in-cheek. We just heard Schmidt Baking and it dealt with Amazon. The appellant's position here is tantamount to my getting up here and stating, I am a partner in Amazon and in Schmidt Baking. Well, Mr. D'Souza, where are your partnership tax returns? How much money have you made? No, no. I've simply reinvested all of my profits over the years. I can't tell you what those profits are because I've never seen the tax returns. I don't know how profitable they've been over the years. But take my word for it, I've reinvested my profits. And that's tantamount to what his argument is. I'm a partner because I reinvested some amount of non-specific, he can't even calculate what they are, didn't know what the profits were. But he reinvested them year after year, never declared such to the IRS, never filed any documents. There are no partnership tax returns. There's no partnership agreement. There is nothing. And, you know, on that point, and I think it's important to close on this point with the partnership, is that the word indispensable, it's not my word, it's from the Court of Appeals of New York back in 1958, matter of Steinbeck. Curiously, this case is not referenced in the appellant's brief whatsoever, although it was referenced in his summary judgment motion, where he passes it off and says, well, that was a tax case. It had nothing to do with partnership. Yes and no. That argument was a tax dispute, but it also involved the plaintiff's statement that I have a partnership or a joint venture. And the Court of Appeals in 1958 stated, you know, in Rule 19, with necessary and indispensable, the word indispensable has a meaning, an agreement to share in the profits and losses is an indispensable element of a joint venture or a partnership. That principle has been cited no less than a hundred times, both by this court in 2003 in the Danacco case, that's 346 F. 3rd 64. It's been cited at least three times by three out of the four New York appellate divisions. In fact, two of those three were granting summary judgment in situations exactly like this, where someone says, I have a partnership agreement. And the court specifically said, you have not presented any evidence of an agreement to share in profits and losses. He can state all he wants that I reinvested my profits. What he has failed to do in some 5,000 pages of record evidence is point to anything where there has been a single agreement to share in a loss or profit. And while he can say this was always profitable, as the district court recognized, that's not the point. Partnerships are a creature of contract. Show me where there is some agreement to share in the losses or the profits. And he's failed to do so. Therefore, summary judgment was proper. And this should be affirmed, Your Honors. Okay. Thank you very much. Why don't we hear from Mr. Caruso. You have reserved one minute for rebuttals. If you have any last point that you'd like to make. I will. Thank you, Judge Nardini. I'll be brief. On the issue of reasonable diligence, and why didn't Mr. Opedisano take a look and see why this agreement stated X, Y, or Z? That's a fact issue. It's a credibility determination. It should be put to a jury. There's a 13-year relationship that has a lot of ins and outs. And her conduct and his conduct need to be weighed. And they need to be cross-examined on those issues. Our position on the tax and on the absence of any partnership tax returns, is that the record 2138 to 2142 shows the retained earnings of Sano Aviation Corp. Mindy Stark, who supplied an affirmation, a declaration on summary judgment, opined that the retained earnings were the equivalent of his profit. He could withdraw those profits. He kept them on the books. It's clear from the tax returns. Yes, there is no K-1. There are no outward indicia of a partnership agreement. On the issue of the indispensable nature of a loss agreement, there's one critical issue, if Your Honors will give me one more minute. I'll be brief. The parties are diametrically opposed on the predecessor entity, which was Aztec Aviation, which preceded Sano Aviation Corp., which were the hub of the wheel that ran this FBO. The predecessor entity, our client, the appellant has maintained, was in financial dire straits. Ms. Zuer has always maintained, throughout and in the record, that Aztec was in great shape after the passing of her husband, despite that she didn't have really the boots on the ground to run it herself, that it was okay. There's a clear fact issue about whether or not that was a profitable enterprise or susceptible reasonably to losses. So the Fat Brands v. Ramjeet case, which both parties cited and the lower court cited, identify that where there is no reasonable expectation of losses, there does not need to be that written loss-sharing agreement that Mr. D'Souza cites too. Okay. That issue, we have clearly our comment on that. We understand that. Thank you very much to both parties. We will take your case under advisement. Thank you, Your Honor. So nice to have you.